```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

United States of America

   v.                                Criminal No. 16-cr-093-LM
                                     Opinion No. 2017 DNH 009
Valentin Delo Perez Soto


**O R D E R**

On November 2, 2015, the New Hampshire State Police executed a search warrant on an apartment in Manchester linked to the defendant, FNU LNU (First Name Unknown, Last Name Unknown).  Although the search warrant authorized the seizure of various documents and other evidence related to identity fraud, the officers found a large quantity of what looked like heroin and other drugs in the apartment.

The defendant is charged with possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1).  He moves to suppress all evidence seized during the search of his apartment.  The government objects.  On December 15, 2016, the court held an evidentiary hearing on this motion. For the reasons that follow, the court denies the motion.

**Background**

In the fall of 2015, New Hampshire State Police Trooper James G. O'Leary began investigating Apartment 402 at 138 Pearl

Street in Manchester, New Hampshire ("Apartment 402").  Trooper O'Leary had received information from the New Hampshire Division of Motor Vehicles ("DMV") that the DMV suspected a person of using fraudulent documents to obtain a New Hampshire driver's license.  The documents referenced Apartment 402 as the person's address.

Trooper O'Leary's investigation more than confirmed the DMV's suspicions.  He identified an individual claiming to be Miguel Angel Sanchez Caraballo as the person who had obtained a driver's license using Apartment 402 as his address.  Trooper O'Leary also determined that, in March 1996, a person using the Sanchez Caraballo identity had been convicted in this court for passport fraud.[1]  The photograph used in the false passport application matched the photograph on the driver's license that the DMV recently issued to the person claiming to be Sanchez Caraballo.  A criminal record check revealed, that in June 2015, the Manchester Police had arrested a person claiming to be Sanchez Caraballo on prostitution-related charges.  The photograph attached to that police report matched the photographs on the driver's license and passport application.

---

[1] The defendant in that case falsely stated on a passport application that he was Sanchez Caraballo.  The true Miguel Angel Sanchez Caraballo and his mother testified at trial that the defendant was an imposter.  The true Sanchez Caraballo died on August 15, 1998.

2

Additionally, fingerprints taken from the person arrested on the prostitution charge matched the fingerprints of the person who had previously been convicted of passport fraud.

Based on his investigation, Trooper O'Leary concluded that in 2015, the defendant had fraudulently used the Sanchez Caraballo identity to apply for a driver's license and two temporary vehicle registrations. Trooper O'Leary also determined that the defendant was the person previously convicted of passport fraud for using the Sanchez Caraballo identity.

On October 28, 2015, Trooper O'Leary applied for a warrant to search Apartment 402. Trooper O'Leary attached to his application an affidavit detailing his investigation. New Hampshire Circuit Court Judge Gerald J. Boyle reviewed the application and found probable cause to believe that Apartment 402 contained evidence of the crimes of Tampering with Public Records or Information in violation of N.H. RSA 641:7 and Identity Fraud in violation of N.H. RSA 638:26. Judge Boyle issued a warrant authorizing the search of Apartment 402 for a detailed list of items potentially related to those crimes ("Boyle Warrant").[2]

---

[2] Attachment B of the Boyle Warrant lists numerous categories of exemplar items that the officers were authorized to seize. See doc. no. 15-1 at 9-12.

On November 2, 2015, Trooper O'Leary, Sergeant Andrew Player, Trooper First Class Shane Larkin, and New Hampshire Probation and Parole Officer Mark O'Donoghue entered Apartment 402 to execute the Boyle Warrant. At that time, the New Hampshire State Police Narcotics and Investigations Unit and FBI Gang Task Force were investigating the defendant for drug-related activity, but that investigation was unrelated to the November 2 search of Apartment 402.[3] At the time of the November 2 search, Trooper Larkin was a member of the Narcotics and Investigations Unit and Gang Task Force, and Officer O'Donoghue was working with the Gang Task Force.

During the initial search, the officers found certain items they believed were evidence of drug crimes, including a scale, a large knife, and several cell phones. Inside the defendant's sock drawer, Trooper Larkin also found $40,000 in cash wrapped in four separate bundles. After finding those items, the officers stopped the search and Trooper O'Leary applied for a warrant to search the apartment for illegal drugs and evidence of drug crimes. New Hampshire Circuit Court Judge William Lyons

---

[3] Law enforcement was aware of the defendant's past involvement in drug trafficking. When he was arrested in 1996 for passport fraud, local police identified the defendant as a local Dominican drug dealer. See doc. no. 15-1 at 5. Further, the defendant had a history of drug-related arrests. See doc. no. 15-2 at 7.

denied the warrant for lack of probable cause, and the officers subsequently resumed their search for evidence of identity fraud.

Upon resuming the search, Trooper Larkin opened a kitchen cabinet next to the oven. The cabinet looked like a storage area for plastic shopping bags. Trooper Larkin removed some of the plastic shopping bags and found a small box inside one of the bags. The box contained what appeared to be the following: 55 fingers (10 grams) of heroin wrapped in green cellophane; five plastic bags containing cocaine; a plastic bag containing blue pills; and a small amount of marijuana. After discovering these drugs, the officers once again stopped their search and applied for another warrant. Judge Lyons approved the application and issued the requested warrant ("Lyons Warrant"). The Lyons Warrant authorized the officers to search Apartment 402 for illegal drugs and other evidence of drug trafficking. After continuing their search under the combined authority of the Boyle and Lyons Warrants, the officers found additional evidence of both identity fraud and drug crimes.

## Discussion

The defendant moves to suppress all evidence seized from Apartment 402 (doc. no. 15). The defendant contends that his Fourth Amendment rights were violated because (1) the Boyle

Warrant was overbroad, and (2) the officers exceeded the scope of the Boyle Warrant during their search.[4]

I. Particularity of the Warrant

The defendant first argues that the Boyle Warrant was an overbroad "general warrant" which authorized the officers to "rummage[e] through" Apartment 402 without limitation. See doc. no. 15 at 6. The government objects, arguing that the Boyle Warrant was sufficiently particular as to both the place to be searched and the items to be seized.

The Fourth Amendment prohibits unreasonable searches and seizures and provides that a warrant must particularly describe the place to be searched and the things to be seized. See U.S. Const. amend. IV. The Fourth Amendment's particularity requirement seeks to prevent the issuance of "general warrants" which "authorize the wholesale rummaging through a person's property in search of contraband or evidence." United States v. Upham, 168 F.3d 532, 535 (1st Cir. 1999) (citing Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971)). A valid warrant: "(1) must supply enough information to guide and control the

---

[4] Because the court does not find either the Boyle Warrant or Lyons Warrant constitutionally defective, the court need not address the defendant's third argument, that the good faith exception to the exclusionary rule should not apply in this case.

executing agent's judgment in selecting where to search and what to seize, and (2) cannot be too broad in the sense that it includes items that should not be seized." United States v. Kuc, 737 F.3d 129, 133 (1st Cir. 2013) (citing Upham, 168 F.3d at 535).

A. Place to Be Searched

The Boyle Warrant identified Apartment 402 at 138 Pearl Street in Manchester as the place to be searched. The officers had no difficulty identifying the single apartment within the building that they were permitted to search. Because the Boyle Warrant unambiguously described the premises to be searched, the warrant description was sufficiently particular. See United States v. McLellan, 792 F.3d 200, 212 (1st Cir. 2015) ("A warrant satisfies the particularity requirement if the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort such that no other premise might be mistakenly searched." (internal quotation marks omitted)).

B. Items to Be Seized

The Boyle Warrant authorized the officers to search Apartment 402 for evidence of record tampering in violation of RSA 641:7 and identity fraud in violation of RSA 638:26.

7

Attachment B of the Boyle Warrant permitted the officers to seize "[a]ll records, in whatever form, and tangible objects that constitute evidence, fruits, or instrumentalities" of the following categories of evidence: (1) evidence related to the production or counterfeiting of government documents; (2) legitimate government documents, such as passports, driver's licenses, and Social Security cards; (3) records related to the acquisition of fraudulent government documents; (4) financial records; (5) cash or items of value made or derived from the production of government documents; (6) evidence related to the identity of any co-conspirators; (7) photographs; (8) personal electronic devices containing evidence related to identity fraud; (9) records related to the occupancy of Apartment 402; and (10) computer equipment and safes and locked containers, which may contain evidence of identity fraud.  See doc. no. 15-1 at 9-12.  The defendant asserts that Attachment B is overbroad because it authorized the seizure of too many items.

Attachment B identified specific types of documents, records, and other categories of evidence related to the defendant's true identity and the production of counterfeit documents.  Although the Boyle Warrant contained the introductory phrase "[a]ll records, in whatever form, and tangible objects that constitute evidence, fruits, or

instrumentalities including" before listing the detailed categories of items, such broad language does not invalidate an otherwise valid warrant. See Kuc, 737 F.3d at 132-33. The First Circuit has long recognized that "the 'general' tail of the search warrant will be construed so as not to defeat the 'particularity' of the main body of the warrant." Id. at 133 (citing United States v. Abrams, 615 F.2d 541, 547 (1st Cir. 1980); Andresen v. Maryland, 427 U.S. 463, 480-81 (1976)). The Boyle Warrant contained introductory language similar to the warrant at issue in United States v. Tsarnaev. See 53 F. Supp. 3d 450, 454-56 (D. Mass. 2014). In Tsarnaev, the court, citing Kuc, held that a general introductory phrase did not invalidate a warrant because (1) the warrant restricted the officers to search for evidence related to certain enumerated crimes, and (2) the warrant contained a list of categories describing items that could plausibly be considered evidence of those specific crimes. See id. at 456-57.

The Boyle Warrant satisfies both prongs of that analysis. First, the Boyle Warrant explicitly referenced RSA 641:7 and RSA 638:26, and limited the search to evidence of those crimes. Second, the list of categories in Attachment B limited the type of evidence related to record tampering and identity fraud that the executing officers were authorized to seize. See United

States v. Timpani, 665 F.2d 1, 5 (1st Cir. 1981) ("The warrant breaks the items into categories.  Each item is plausibly related to the crime . . . that is specifically set out."). Attachment B lists categories of evidence associated only with record tampering and identify fraud.  As such, the Boyle Warrant particularly described the kinds of items that the officers could lawfully search for and seize in Apartment 402. Accordingly, the court rejects the defendant's argument that the Boyle Warrant is overbroad.

II.  Scope of the Search

The defendant next argues that the officers violated his Fourth Amendment rights because their search of Apartment 402 exceeded the scope of the Boyle Warrant.  The defendant contends that (1) the officers searched in areas where they could not reasonably have expected to find evidence of identity fraud, and (2) the officers searched for drug evidence after they were explicitly denied a warrant to do so.

"It is settled law that the search and seizure conducted under a warrant must conform to the warrant." Upham, 168 F.3d at 536 (citing Marron v. United States, 275 U.S. 192, 196-97 (1927)).  "A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts

10

of entry or opening may be required to complete the search." United States v. Ross, 456 U.S. 798, 820-21 (1982). "As a general proposition, any container situated within residential premises which are the subject of a validly-issued warrant may be searched if it is reasonable to believe that the container could conceal items of the kind portrayed in the warrant." United States v. Gray, 814 F.2d 49, 51 (1st Cir. 1987) (citations omitted).

    A. <u>Reasonable Expectation of Finding Evidence of Identity Fraud</u>

The defendant argues that Trooper Larkin exceeded the scope of the Boyle Warrant by searching inside a kitchen cabinet that appeared to be a storage area for plastic shopping bags. The government does not agree, and argues that it was reasonable for Trooper Larkin to believe the area in the kitchen cabinet might contain evidence of identity fraud.

Courts must take special care to ensure that a document search does not become an impermissible general search. See Andresen, 427 U.S. at 482 n.11. But as the First Circuit has recognized, "[a]s to document searches especially, the easily concealed nature of the evidence means that quite broad searches are permitted." United States v. Giannetta, 909 F.2d 571, 577 (1st Cir. 1990). When executing a warrant to search for

11

documentary evidence, the officers may "search anywhere such documents could be hidden, which would include pockets in clothing, boxes, file cabinets and files."  See id.

Here, the search of Apartment 402 was largely a document search, as the executing officers were searching for documentary evidence of the defendant's true identity and his involvement in record tampering and identity fraud.  The Boyle Warrant authorized the officers to search anywhere in the apartment where they reasonably believed such evidence may be concealed.  Although the scope of the search was broad, the warrant did not authorize the officers to conduct an unconstitutional general search of the premises; the search was limited to areas the officers reasonably believed could contain evidence of the enumerated crimes.  A person in possession of the type of evidence described in the Boyle Warrant would not necessarily conceal this type of evidence in a neatly organized manner or in a single location within his residence.  As Trooper Larkin testified at the evidentiary hearing, identity thieves hide identity documents in various locations, such as trash cans, vents, and in the back of picture frames.  Based on the testimony of Troopers O'Leary and Larkin and Officer O'Donoghue, the court is persuaded that the executing officers limited their

search of Apartment 402 to areas they reasonably believed could contain evidence of identity fraud.

The court finds that it was reasonable for Trooper Larkin to believe that the items described in the warrant could have been hidden in a kitchen cabinet.  When Trooper Larkin opened the kitchen cabinet and found a number of plastic shopping bags, it was reasonable for him to believe that evidence of identity fraud could be hidden in those plastic bags.  Once Trooper Larkin discovered a small box inside one of the plastic bags, it was perfectly reasonable for him to believe that the box could contain identity documents.  The court finds that Trooper Larkin acted within the scope of the Boyle Warrant when he searched through the plastic bags and box that he found in the kitchen cabinet.

B. Searching for Drug Evidence

During the initial search of the apartment, the officers found certain items, including a scale, a large knife, several cell phones, and $40,000 in cash, that they believed were evidence of drug crimes.  After finding these items, the officers stopped their search and applied for a warrant to search for evidence of drug crimes.  After Judge Lyons denied Trooper O'Leary's initial application, the officers resumed their search for evidence of identity fraud pursuant to the

13

Boyle Warrant.  It was during that portion of the search that Trooper Larkin found the box of drugs inside the kitchen cabinet.  The defendant argues that the officers were impermissibly searching for drug evidence after Judge Lyons explicitly denied their request to search for such evidence.  In essence, the defendant asserts that when Trooper Larkin removed the plastic shopping bags and opened the box inside the kitchen cabinet, he was looking for drug evidence, not evidence of identity fraud.

Even if Trooper Larkin suspected that the box in the kitchen cabinet contained drug evidence, such suspicion would not invalidate the search.  The fact that drugs might be found in a box that could contain evidence of identity fraud does not invalidate the search for identity-fraud evidence.  As explained by the Supreme Court:

> The fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure if the search is confined in area and duration by the terms of a warrant . . . .  [I]f [an officer] has a valid warrant to search for one item and merely a suspicion concerning the second, whether or not it amounts to probable cause, we fail to see why that suspicion should immunize the second item from seizure if it is found during a lawful search for the first.

Horton v. California, 496 U.S. 128, 138-39 (1990); see also United States v. Ribeiro, 397 F.3d 43, 52 (1st Cir. 2005) ("As long as the search was within the scope of the warrant, it is no

14

matter that the officers may have hoped to find drugs."). As discussed above, Trooper Larkin lawfully searched the box inside the kitchen cabinet for identity-fraud evidence under the terms of the Boyle Warrant. Although Judge Lyons had denied a warrant to search for drug-related evidence, the Boyle Warrant still authorized the officers to search Apartment 402 for evidence of record tampering and identity fraud. Thus, even if the officers suspected they would find illegal drugs, Trooper Larkin's search of the kitchen cabinet for evidence described in the Boyle Warrant was lawful.[5]

In sum, the officers did not exceed the scope of the Boyle Warrant during their search of Apartment 402. The officers limited their search to areas of the apartment where they reasonably believed evidence described in the warrant could be found. Accordingly, the search of Apartment 402 and seizure of illegal drugs and evidence of drug trafficking did not violate the Fourth Amendment.

---

[5] The defendant suggests that because certain executing officers were associated with the Narcotics and Investigations Unit and Gang Task Force, who were actively investigating the defendant, these officers were seeking evidence of drug trafficking in addition to identity fraud. However, because the officers' search was within the scope of the Boyle Warrant, the officers' subjective belief that they would find drugs does not affect the lawfulness of the search. See Ribeiro, 397 F.3d at 52.

**Conclusion**

For the foregoing reasons, the defendant's motion to suppress (doc. no. 15) is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

January 12, 2017

cc:   Bjorn Lange, Esq.
      William E. Morse, Esq.
      United States Marshal
      United States Probation